## 6611.   BROWN v. THE STATE.

There being no direct evidence of a sale of whisky, and the circumstances in proof tending to show a sale being not inconsistent with the theory of the defendant's innocence, and being insufficient to exclude every reasonable hypothesis save that of his guilt, the trial judge erred in overruling the motion for a new trial.

DECIDED OCTOBER 15, 1915.

Accusation of sale of liquor; from city court of Carrollton—Judge Beall.   April 30, 1915.

*Buford Boykin, Raymond Robinson,* for plaintiff in error.

*C. E. Roop, solicitor,* contra.

WADE, J.   Harper, a policeman of the city of Carrollton, was the sole witness for the State.   He testified, that he procured one Simpson, who had been employed previously to catch "blind tigers," gave him some money, and directed him to see if he could purchase whisky from the defendant; that he sent him to the defendant to buy whisky, watched, and saw him give the defendant the money at a stand in the fair grounds, while several other people were standing near; that after receiving the money the defendant went over towards a barn, and in a few minutes came back and went behind a tent, in company with Simpson, "another Simpson boy," and another negro, and the defendant handed a bottle to one of the Simpsons, who drank, passed the bottle to the other Simpson boy, and then handed it to the defendant and the other negro, who also drank therefrom; that he went up to the party, got the bottle, and found that there was a small quantity of whisky remaining therein; and that this transaction occurred in Carroll county in October, 1914.   On cross-examination the witness said further: "I don't know whether it was Jim Brown's whisky or not.   I don't know whether these Simpson boys gave this money to Jim Brown for whisky or not.   I don't know how much money passed between Simpson and Brown.   What for I didn't know.   I know that Jim Brown went over toward the barn, and later that the Simpson boys and Jim Brown and another negro went in between the tents there.   I don't know whether Jim Brown carried the whisky there, no more than I saw him give it to the Simpson boys.   I don't know whether he got it from the negro or the Simpson boys.   I saw him pass it to the Simpson boys.   I saw him hand it to this boy.   I don't know whether it had been opened before that or not.

I don't know the negro who carried the whisky in between the tents. Jim was the first one I saw with it. I can't say who had it. I didn't see the Simpson boys with it till Jim give it to them." He further said that the Simpson boys stayed at the stand while the defendant went off, and when the defendant returned the witness saw the whisky for the first time in the defendant's possession, and that he had directed Simpson to go to the defendant to buy whisky. There was no testimony from Simpson or any one else relative to the transaction; or in other words, no direct testimony that any sale of whisky had been made by the defendant Brown to Simpson in return for the money which the witness Harper saw Simpson deliver to the defendant. The defendant made the following statement: "I carried a case of whisky out there for these boys that night, and when I went on down there by the Greek stand, they asked me did I have it. I told them I carried it out there for them. They told me to get a pint out of it, and said, 'come on up here and take a drink.' Went up there between the tents, and he give me 25 cents for bringing that package out there. Carried it from the train where they had it out there for them. Never sold them none and never got any, never went and got none. Told me to open it and get a pint. Went up there between the tents and drunk it, and Mr. Harper come up there. . . I carried it out there for them, it is true, but it was their whisky. I carried it out there for them."

It will be noticed that there is absolutely no direct testimony of any sale of whisky on the part of the defendant, and it is equally apparent that the circumstances in proof tending to establish the fact of such a sale are not inconsistent with the theory of the defendant's innocence. The witness Harper testified that he gave Simpson money to be used in purchasing whisky from the defendant, and he said that he saw Simpson "hand" to the defendant some amount of money, and thereafter, or at the same time he saw the defendant produce a bottle of whisky which he presented to Simpson, and from which Simpson, his brother, another negro, and the defendant all drank, and that he himself then advanced and took possession of the bottle, and found that it still contained a small quantity of corn whisky. He further said that he did not know whether the whisky handed to Simpson by the defendant was the whisky of the defendant or not, and did not know

whether "the Simpson boys" gave the defendant the money, which he saw paid, for the purchase of whisky; that he knew money "passed" between the defendant and Simpson, but did not know "what for." What amount of money Simpson gave to the defendant, or whether it was the same amount of money received by him from Harper, does not appear from the testimony of the State's witness; nor does .it appear whether this amount was in excess of the sum of 25 cents, which the defendant asserted Simpson paid him on the night in question for transporting from the train to the fair grounds whisky, which he said was the property of the two Simpson boys. It is true it might be reasonably supposed from the circumstances in proof that the accused made a sale of whisky to Simpson, but this hypothesis is by on means the only reasonable hypothesis which might be based upon the testimony, and in fact the explanation offered by the defendant is not disputed by any witness, and is in no particular inconsistent with the facts proved, but is altogether as reasonable as the theory that an unlawful sale of liquor was made by the defendant at the time and place charged. To put the whole matter in small compass, it may be said that there is no direct proof of the corpus delicti, and that the circumstances proved do not establish the corpus delicti to the exclusion of every other reasonable hypothesis. The defendant could not be convicted of a sale of whisky unless the fact of the sale was itself shown, either by direct evidence or by circumstantial evidence sufficient to exclude every other reasonable hypothesis, and at best the evidence actually adduced at the trial leaves the question open to conjecture as to whether there was or was not such a sale. If the witness for the State had been able to testify to the fact of a sale, or in other words, that the money paid by Simpson to the defendant was actually and within his knowledge paid for whisky, the conviction of course would stand; but the witness expressly stated that he was unable to say for what purpose the money he saw paid to the defendant was so paid, and there was nothing to dispute the assertion, made by the defendant in his statement, that the whisky in question was the property of Simpson and not of the defendant. It does not appear from the record why Simpson was not sworn in behalf of the State. His testimony probably would be conclusive on another trial, for certainly he must know whether or not there was in fact a sale on the occasion re-

ferred to in the evidence of Harper; but in the absence of any testimony from Simpson himself as to the facts of the transaction, and in the absence of testimony from any one else covering the same question, it can not be said that but one reasonable hypothesis is supported by the facts in proof. It appears strange that Simpson, if available as a witness at the time of the trial, was not called upon to testify as to that thing which he of all men best knew and understood. While we may have, as the trial jury evidently had, a strong *suspicion* as to the defendant's guilt, we do not believe that under the evidence his conviction was authorized; for it is not enough, in any criminal case, to create only a strong suspicion of the defendant's guilt; and where circumstantial evidence alone is relied upon, it must be so complete as to exclude every other reasonable hypothesis than that of the defendant's guilt.

It is unnecessary to discuss the grounds of the amendment to the motion for a new trial. They appear to be without any substantial merit.                                    *Judgment reversed.*

Broyles, J., dissenting. In my opinion there was direct evidence of a sale of whisky by the accused. A policeman of the city of Carrollton swore that he sent one Simpson to buy whisky from the defendant; that he watched Simpson and saw him go to the defendant and hand him some money; that after receiving the money the accused went over toward a barn and came back within a short time and handed the bottle of whisky to Simpson. Under numerous decisions of the Supreme Court and of this court, this evidence was sufficient to show that a sale of whisky had occurred. This evidence by itself would not only have *authorized* a finding that the defendant was guilty, but would have *demanded* it. The defendant introduced no evidence, but made a statement in which he denied his guilt, and offered what the jury might have considered a reasonable explanation of his conduct; but the jury had a right to reject his statement entirely, which they evidently did. His statement being rejected and out of the case, nothing was left but the direct evidence of the defendant's guilt, and, in my opinion, the judgment overruling the motion for a new trial should be sustained.