## 70435. McCRANIE v. LANGDALE FORD COMPANY et al.
(335 SE2d 667)

McMurray, Presiding Judge.

Plaintiff John V. McCranie brought suit against defendants, M. D. Meeks and Langdale Ford Company (Langdale Ford), in the State Court of Lowndes County. In his complaint, plaintiff alleged that on August 27, 1982, Meeks wilfully struck him and knocked him to the ground; that the incident took place upon the sales lot of Langdale Ford; that in striking plaintiff, Meeks acted in his capacity as an agent and servant of Langdale Ford; and that defendants were jointly and severally liable for the injuries which Meeks inflicted upon plaintiff. Each defendant answered, denying the material allegations of the complaint. Thereafter, following discovery, Langdale Ford moved for summary judgment and contended that the acts of Meeks did not occur within the course and scope of his employment.

A review of the record reveals the following undisputed facts: Meeks was employed by Langdale Ford as a truck salesman. He knew the plaintiff for five or six years, having sold trucks to plaintiff for use in his business. On August 27, 1982, plaintiff telephoned Meeks concerning a truck which he intended to purchase. As a result of a misunderstanding between plaintiff and Meeks about tires on the truck, plaintiff verbally abused and cursed Meeks. Then plaintiff told Meeks

that he was "on the way to the Ford place" and he slammed the receiver on the telephone. Before plaintiff arrived, Meeks made arrangements to put new tires on the truck, hoping that "that would stop the ruckus." Plaintiff pulled up to Langdale Ford and jumped out of his car. He immediately began cursing Meeks, calling him a "crooked s. . .o. . .b. . ." and a "d. . . liar." Meeks told plaintiff there was no need for him to be upset because he was putting new tires on the truck. Plaintiff was not appeased and he continued his verbal assault against Meeks. Meeks warned plaintiff that he better not continue to curse him. The two men were on their way to look at the truck when Langdale Ford's truck manager, Franklin Eldridge, Sr., approached them. While Meeks tried to explain the situation to Eldridge, plaintiff hurled more vulgar epithets at Meeks. When plaintiff again called Meeks a "lying s. . .o. . .b. . .," Meeks punched plaintiff in the nose, knocking him to the ground. Meeks immediately apologized to plaintiff and extended his hand, but plaintiff would have no part of Meeks' peace offering. Plaintiff's nose was bleeding and he then left.

The trial court granted Langdale Ford's motion for summary judgment and plaintiff appeals. *Held*:

OCGA § 51-2-2 provides: "Every person shall be liable for torts committed by . . . his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily." "As construed in *Frazier v. Southern Ry. Co.*, 200 Ga. 590, 593 (37 S.E.2d 774), 'The word "voluntarily" in § 105-108 [OCGA § 51-2-2] will cover any or all motives or purposes of the wrongdoer, acting in the scope of his employment, which are not covered by "acts of negligence." The true test is not whether the tort was committed by reason of anger, malice or ill will, but whether or not it was committed in the prosecution and within the scope of the master's business. If the tort be committed, not by reason of the employment, but because of matters disconnected therewith, the master would not be liable.' As stated in *Southern Railway Co. v. James*, 118 Ga. 340, 344 (45 S.E. 303, 63 L.R.A. 257), 'If the criminal act of the servant was done within the range of his employment and for the purpose of accomplishing the authorized business of the master, the latter is liable.'" *Pope v. Seaboard Air Line R. Co.*, 88 Ga. App. 557, 560 (77 SE2d 55).

Ordinarily, the question of whether or not the act of the servant was done within the scope of his employment is for the jury to decide. *Jones v. Reserve Ins. Co.*, 149 Ga. App. 176, 178 (3) (253 SE2d 849). Thus, where there is evidence that the act of the servant was not purely personal (see in this connection *Andrews v. Norvell*, 65 Ga. App. 241, 245 (15 SE2d 808)), a genuine issue of material fact exists concerning the capacity in which the servant was acting when he com-

mitted the tort and summary judgment is inappropriate. *Miller v. Honea*, 163 Ga. App. 421 (294 SE2d 629).

In *Miller v. Honea*, supra, plaintiff Miller sustained injuries by the hands of Honea, an assistant business agent for the union. One of Honea's duties was to handle grievances and Miller, a member of the union, joined several other members who were discussing grievances with Honea. He "made several less than complimentary remarks concerning Honea's competence and performance as a representative of the Union." The discussion became heated and the altercation followed in which Miller was injured. Suit was brought against Honea and the union. The trial court awarded summary judgment to the union and this court reversed, holding: "On the basis of the record before us, we cannot say that, as a matter of law, Honea had so deviated from his duties as to make his assault upon Miller a purely personal act. There being a genuine issue of material fact as to [the] capacity in which Honea was acting at the time of the tort, the question must be resolved by a jury." In so holding, this court observed that "there was evidence that Honea was at his employer's place of business and that he was generally engaged in doing the type of work for which he was hired. In fact, the harsh words which provoked the overt attack by Honea related to the manner and method in which Honea performed — or failed to perform — those duties." *Miller v. Honea*, supra at 422.

In the case sub judice, as in *Miller v. Honea*, supra, it cannot be said that, as a matter of law, the servant left the scope of his employment and the authorized business of the master when the tort was committed. " 'The theory that one may be a servant one minute, and the very next minute step aside and act in his individual capacity, and then the next minute step back into his capacity as a servant is too refined a distinction. Since to exonerate the master from liability it is essential that the deviation should be for purposes entirely personal to the servant, where the servant, notwithstanding the deviation, is engaged in the master's business within the scope of his employment, it is immaterial that he join with this some private purposes of his own.' *Andrews v. Norvell*, 65 Ga. App. 241, 245 (15 SE2d 808) (1941)." *Miller v. Honea*, supra at 422.

In the case sub judice, plaintiff's verbal assault against Meeks pertained to the manner and method in which Meeks performed his salesman's duties. Thus, even to the extent that plaintiff's words provoked the blow by Meeks, reasonable men can conclude that Meeks did not act in a *purely* individual capacity when he struck plaintiff. *Miller v. Honea*, 163 Ga. App. 421, supra. Compare *Broome v. Primrose Tapestry Mills*, 59 Ga. App. 70 (200 SE 506).

The cases upon which Langdale Ford relies are not apposite. In *Lynch v. Florida Cen. &c. R. Co.*, 113 Ga. 1105 (39 SE 411), for exam-

ple, that plaintiff did not approach "the agent on the business of the company, but to settle a personal grievance." Id. at 1108. Likewise, in *Southern Bell Tel. &c. Co. v. Sharara*, 167 Ga. App. 665 (307 SE2d 129), the acts of the tortfeasor were "unrelated to the task of installing the phone and were *completely* personal in nature." (Emphasis supplied.) Id. at 667. These cases differ markedly from the case sub judice in which a genuine issue of material fact remains as to whether the acts of Meeks pertained, at least in part, to his employment.

*Judgment reversed. Banke, C. J., and Benham, J., concur.*

DECIDED SEPTEMBER 16, 1985 —
REHEARING DENIED OCTOBER 2, 1985 — 

*Gary L. Moser, George T. Talley*, for appellant.
*J. Carol Sherwood, Jr., William A. Turner, Jr., Robert M. Clyatt*, for appellees.